UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| RALPH COMPAGNONE,<br><br>                    Plaintiff,<br><br>         v.<br><br>MJ LICENSING COMPANY, GRI ENTERTAINMENT, LLC, JEFFREY A. DASH and LOUIS GIOVANNI RUSSO a/k/a GIANNI RUSSO,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Docket No. 1:18-cv-06227(AC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6)</u>

**PRELIMINARY STATEMENT**

Plaintiff Ralph Compagnone's ("plaintiff" or "Compagnone") Complaint seeks, among other relief, to recover under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") allegedly unpaid wages for work performed as an alleged employee of defendant MJ Licensing Company ("MJ") during the years 2012 through 2018. The Complaint (a copy of which is attached to the accompanying Declaration of Jeffrey M. Bernbach as Exhibit 1) alleges that plaintiff was employed by MJ, a vodka distributor, from 2012 through the date of the Complaint (which is not dated but was filed on July 10, 2018) as Chief Marketing Officer. The Complaint does <u>not</u> allege, nor was there in fact, a written employment agreement or any agreement at all between the parties as to (a) the amount of compensation plaintiff was to be paid by MJ or (b) as to the number of hours plaintiff was to work, or (c) as to plaintiff's work schedule or (d) as to plaintiff's duties, or (e) as to any other terms of his "employment", such as

1

would be necessary to establish an employment relationship between plaintiff and defendants; which employment relationship is a pre-requisite for an individual to be covered by the provisions of the FLSA and NYLL.  The Complaint fails totally to even allege facts necessary to establish that plaintiff was an "employee" or that defendants were "employers" as defined by the FLSA and NYLL.

Incredible as it may seem, plaintiff, a sophisticated businessman who, for many years has operated, and continues to operate, his own business at all times relevant herein, and is currently Treasurer of the world famous Friars' Club in New York City, would have the Court believe that he worked for MJ for the past six years, routinely between 40 and 75 hours per week, without ever being paid or even taking any action to compel payment during that lengthy period of time. And he claims to have failed to do so, despite the fact that during said period of time (2016 to 2017) his wife Linda Compagnone, an experienced senior executive in her own right, worked as MJ's bookkeeper and surely was aware of the circumstances.  Thus, while plaintiff arguably may be able to claim to have rendered some services to MJ as an independent contractor, as discussed in further detail below, he clearly did not do so in the capacity of an employee and, therefore, is not covered by the provisions of either the FLSA or the NYLL.  Accordingly, defendants respectfully submit that plaintiff's claims under the FLSA and NYLL should be dismissed in their entirety.  Defendants also respectfully submit that in the absence of any remaining federal cause of action, the Court should decline to exercise supplemental jurisdiction over plaintiff's third and fourth causes of action for unjust enrichment and quantum meruit, respectively.

## PROCEDURAL HISTORY

Plaintiff filed this action by Summons and Complaint on or about July 10, 2018.  On or about July 27, 2018, counsel for defendants accepted service on their behalf.

RELEVANT FACTS

Plaintiff Ralph Compagnone is a sophisticated businessman who has continuously operated his own company Imagelink, a graphics design business, for the past 23 years, including at all times relevant herein, and currently serves as Treasurer of the world famous Friars Club in New York City. From approximately 2010 to 2014, plaintiff also worked as an independent sales agent, licensed by MJ's compliance company MHW LTD. GRI International is totally separate and apart from the named defendant GRI Entertainment, which is in no way connected to the wine and alcohol business. Neither MJ nor GRI International ever paid plaintiff for spirits sales. GRI International ceased all operations in 2014.

MJ Licensing was formed in 2014 to sell vodka under the trade name Don Corleone Vodka, which name was licensed from Paramount Licensing Inc., and has been selling same since on or about February 2016. At some point after its formation, plaintiff was retained as an independent commissioned sales person for its vodka product. He has been paid any and all commissions due and owing, and has not made any claim for same herein. According to plaintiff's Linkedin page, a copy of which is attached to the accompanying Declaration of Jeffrey Dash as Exhibit 1, plaintiff commenced his marketing efforts on behalf of MJ in January 2016. In the Spring of 2018, plaintiff was awarded one percent of the shares in MJ for his efforts on MJ's behalf, which is valued at $250,000.

While plaintiff alleges that he "put aside" his graphics and printing business, Imagelink, of which he is President, in order to devote full time to being Chief Marketing Officer of MJ, his LinkedIn profile (a copy of which is attached to the Dash Declaration) represents that he actively continued to work as President of Imagelink throughout the entire relevant time period, 2012 to

2018. Plaintiff's assertion that MJ at all relevant times held office space at 757 Third Avenue is simply false and misleading, as it was in fact Imagelink that at all relevant times was the lessee and occupier of that space. Defendant MJ leased desk space therein during a brief period in January 2015 only.

In 2016 and 2017, plaintiff's wife Linda Compagnone, herself an experienced senior executive, was retained as an independent contractor to do bookkeeping and audit the 2014-2015 books of MJ. She was given full access to QuickBooks and bank records, including the federal and state quarterly employee filings for Jeffrey Becker who was employed by MJ for a few weeks in early 2015, in order to prepare all reports and filings for MJ's accountants Citroen Cooperman. At no time did she ever advise that any required quarterly reports for plaintiff were missing or necessary or that tax deposits for FICA and SDI were not made in a timely manner; thereby effectively acknowledging that MJ had no employees.

ARGUMENT

PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER EITHER THE FLSA OR THE NYLL

A. Applicable Law

The provisions of the FLSA and NYLL apply only to "employees" as defined thereunder. Schwind v. EW & Associates, 357 F. supp. 2d 691, 697 (S.D.N.Y. 2005). Therefore, at the outset, it is necessary to determine whether an employer/employee relationship ever existed between plaintiff and MJ.

To establish a claim under the FLSA, a plaintiff must show that he is an employee. Chen v. Major League Baseball. 6 F.Supp. 453-54 (S.D.N.Y. 2014). While the terms "employer" and "employee" are only at best vaguely defined under the FLSA and NYLL, there is a substantial

body of case law that has dealt with filling the void. The FLSA defines the verb "employ" broadly to mean "suffer or permit to work" (29 U.S.C.S. section 203(g)) and defines "employer" as including any person acting in the interest of an employer in relation to an employee, (29 U.S.C.S. section 203(d)),  while nowhere defining "employer" in the first instance. Irizarry v. Catsimatidis, 722 F. 3d 99 (2d Cir. 2013).  Thus, to make the relevant determinations, the Second Circuit relies on the "economic reality"/ "totality of the circumstances" test, comprised of four factors: whether the employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules, (3) determined the rate and method of payment, and (4) maintained employment records. Barfield v. NYC Health and Hospitals Corp., 537 F 3d 132, 143 (2d Cir. 2008), none of which comprise a rigid rule but which are intended to provide a non-exclusive and overlapping set of factors to determine whether the economic realities test has been met. Zheng v. Liberty Apparel Co., 355 F 3d 61, 75-76 (2d Cir. 2003).

    Plaintiff's burden of establishing that he is an employee under the NYLL is similar, but not identical, to his burden under the FLSA. However, the NYLL focuses more on the degree of control exercised by the purported employer over the purported employee, as opposed to the "economic reality" of the situation. Hart v. Rick's Cabaret International, Inc., 967 F. supp. 2d 901, 923 (S.D.N.Y. 2013). In Bynog v. Cipriani Group, Inc., 1 N.Y. 3d 193 (2003), the New York Court of Appeals has set forth five factors determining control under the common law test, including whether the worker: (1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule.

Plaintiff Has Failed To Demonstrate The
Existence Of An Employment Relationship

Even a cursory reading of the Complaint reveals that plaintiff has failed to plead facts sufficient to meet the threshold requirement of establishing the existence of an employer – employee relationship.  Of the Second Circuit's "economic reality" test factors to determine coverage under the FLSA, plaintiff does not plead that anyone on behalf of MJ controlled his work schedules or that he even had an established work schedule, nor does he plead that anyone on behalf of MJ determined his rate of pay and method of payment or that he had an agreed on rate of pay, nor does he plead that MJ maintained employment records.  It is crystal clear from his Complaint that the failure to do so is simply because of (a) his de facto acknowledgment that he set his own hours, which he claims varied between 40 and 75 per week, and (b) his express admission that he had no agreed-upon pay rate, so, of course, there was no reason for an agreed-upon method of payment. Rather than constituting a violation of the provisions of the FLSA, the absence of any employment records is further proof of not being an employee; there being no need for employment records for non-employees.

Nor does the Complaint plead facts sufficient to meet the "control by the employer over the employee" test relied upon under the NYLL to determine employee status.  Plaintiff's Complaint specifically states (a) that he did not receive any pay or fringe benefits, thereby conceding he was not on MJ's payroll, (b) nor does he claim to have worked a fixed schedule or that he was doing anything other than working at his own convenience, and (c) as discussed

above, it is clear that he did in fact engage in employment other than working solely on behalf of MJ by virtue of his continuing to operate his own business.

Plaintiff's reliance on paragraph 2 of the Confidential Information and Invention and Assignment Agreement, a copy of which is attached to the Dash Declaration as Exhibit 2, which clearly states in its opening sentence that it is applicable to employees or advisors (independent contractors) as evidence of an employment relationship in no way fills the evidentiary void discussed above. Not only does it fail to include any of the requisite indicia of employment status established under the FLSA and NYLL - - i.e. pay rate, work schedule, maintenance of records and supervision - - but by its very terms is applicable to <u>either</u> employees <u>or</u> advisors (independent contractors). Plaintiff's argument in this regard is a classic example of putting the cart before the horse. The agreement does not create an employment relationship. It applies to either employees or independent contractors, whose status must initially be determined separate and apart from the agreement itself in order to determine its potential applicability.

## CONCLUSION

For all the reasons set forth above, and for such other and further reasons as the Court may determine, defendants respectfully request that Count I (Failure To Pay Wages – FLSA) and Count II (Failure To Pay Wages – NYLL) of plaintiffs complaint be dismissed in their entirety, and that, in the absence of any remaining Federal claim, the Court decline to assert supplemental jurisdiction over Count III (Unjust Enrichment) and Count IV (Quantum Meruit), together with such other and further relief as the Court deems just and proper.

Dated: October 4, 2018

BERNBACH LAW FIRM PLLC

By: _____
    Jeffrey M. Bernbach

707 Westchester Avenue, Suite 411
White Plains, New York 10604
(914) 422-5717 (telephone)
(914) 422-5718 (facsimile)
Benbachlawfirm@verizon.net
*Attorneys for Defendants*