USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 5/2/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH COMPAGNONE,<br><br>                              Plaintiff,<br>-against-<br><br>MJ LICENSING CO., GRI ENTERTAINMENT, LLC, JEFFREY A. DASH, and LOUIS GIOVANNI RUSSO a/k/a GIANNI RUSSO,<br><br>                              Defendants. | 1:18-cv-6227 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Ralph Compagnone (hereinafter, "Plaintiff" or "Mr. Compagnone") brings this action against MJ Licensing Co. ("MJ"), GRI Entertainment, LLC ("GRI"), and Louis Giovanni Russo, a/k/a Gianni Russo ("Mr. Russo") (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

## PROCEDURAL HISTORY

Mr. Compagnone initiated this action on July 10, 2018. ECF No. 1. On September 21, 2018, Defendants filed a Letter Motion with the Court seeking a pre-motion conference to discuss their anticipated motion to dismiss. ECF No. 11. On September 26, 2018, the Court denied Defendants' request for a pre-motion conference, but granted Defendants leave to file their Motion to Dismiss. ECF No. 14. Defendants filed their Motion on October 5, 2018, along with supporting documents. ECF Nos. 15-18. Plaintiff filed an Opposition to Defendants' Motion on October 26, 2018. ECF Nos. 20-21. Defendants filed a Reply to Plaintiff's Opposition on November 6, 2018. ECF No. 23.[1]

---

[1] On October 11, 2018, Defendants filed a Letter Motion with the Court requesting a continuance of the scheduled mediation pending the resolution of the Motion to Dismiss. ECF No. 19. The Court denied Defendants' request on November 1, 2018. ECF No. 22. A mediation session was held on February 26, 2019 but was unsuccessful. ECF No. 24.

Defendants' Motion is deemed fully briefed. After careful consideration, Defendants' Motion to Dismiss is hereby **DENIED**.

## BACKGROUND[2]

According to the Complaint, Defendant MJ has the exclusive license to market and distribute spirits under the Don Corleone Brand. Compl. ¶ 1. Defendant Russo is the "face of the brand," and the Brand Ambassador. *Id.* Defendant Dash and Defendant GRI are equity shareholders of MJ. *Id.* ¶ 10. Mr. Compagnone alleges that he began working for Defendants in 2012 as the Chief Marketing Officer. *Id.* ¶ 1.

In 2014, Mr. Compagnone claims that he signed a Confidential Information and Invention Assignment Agreement (the "Agreement") as a condition of his employment. Compl. ¶¶ 1, 17-18. The Agreement required Plaintiff to "devote his full time and best efforts to MJ." *Id.* Specifically, the Agreement states, in part:

> 2. **DUTIES:** I will perform for the Company such duties as may be designated by the Company from time to time or that are otherwise in the scope of the Relationship and not contrary to the instructions from Company. During my Relationship I will devote my entire best business efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interests of the Company without prior written Consent of the Company.

*Id.* ¶ 20. In accordance with the Agreement, Plaintiff alleges that he did just that – devoted his entire best business efforts to the interests of the Company. *Id.* ¶¶ 1, 21. Mr. Compagnone claims that he put his personal business on hold in order to more fully dedicate his time and energy to

---

[2] When determining whether to dismiss a case, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Pursuant to that standard, this recitation of facts is based on Plaintiff's Complaint and accompanying submissions. *See* ECF No. 1.

2

the interests of Defendants. *Id.* ¶ 21. Further, Plaintiff alleges that between 2012 and 2017 there were times when he worked more than seventy-five hours per week. *Id.* ¶ 22. Among other things, Mr. Compagnone produced a logo, created a website, collaborated with counsel, conducted interviews, secured sales, and engaged in various research and creative assignments for Defendants and the Don Corleone Brand. *Id.* ¶ 28. Despite his extensive contributions and multiple discussions pertaining to salary and payment, Plaintiff alleges that Defendants failed to compensate him for his work.[3] *Id.* ¶¶ 23-26.

Mr. Compagnone alleges that Defendants failed to pay him minimum wage in violation of the FLSA and NYLL. Compl. ¶¶ 31-44. Further, Plaintiff alleges that, by withholding money, Defendants have been unjustly enriched. *Id.* ¶ 46.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."

---

[3] Plaintiff alleges that the only payments he received were minor commissions on particular sales totaling less than $1,000. Compl. ¶ 27.

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

### I. Fair Labor Standards Act

In 1938, Congress passed the FLSA to ensure fair labor standards that would protect the general well-being of workers. 29 U.S.C. § 201. Among other things, employers are required to pay their employees minimum wages. 29 U.S.C. § 206. To state claim under the minimum wage prong of the FLSA, a plaintiff must allege three things: (1) she was defendant's employee; (2) her work involved interstate activity; and (3) she worked hours for which she did not receive minimum wages.[4] *Tackie v. Keff Enterprises*, 2014 WL 4626229, *2 (S.D.N.Y. Sept. 16, 2014).

#### a. Plaintiff Has Sufficiently Alleged That Defendants Are Employers

As stated, the first element a plaintiff must allege is that she was a defendant's employee. *Tackie*, 2014 WL 4626229, *2. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition has been interpreted as one with "striking breadth," so that the provisions of the FLSA can have "the widest possible impact in the national economy." *Nationwide Mut. Ins. Co. v.*

---

[4] Similarly, the NYLL requires employers to pay employees set rates for scheduled work. N.Y. Comp. Codes R. & Regs. Tit. 12 § 142-2.2.

*Darden*, 503 U.S. 318, 326 (1992); *Herman v. PSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

"Whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality." *Olvera v. Bareburger Group LLC*, 73 F.Supp.3d 201, 205 (S.D.N.Y. 2014) (citing *Barefield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)). Under the FLSA, a plaintiff may have more than one employer, in which case, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act …" 29 C.F.R. § 791.2(a); *see Olvera*, 73 F.Supp.3d at 205.

The Second Circuit promulgated the test for determining 'employer' status in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). The four-pronged test asks whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12. While control is an essential aspect of the 'employer' test, "such status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman*, 172 F.3d at 139. Moreover, control may be restricted or only exercised occasionally, while still rendering a defendant as an employer. *See id.* (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988)).

Here, in line with the test outlined in *Carter*, the Complaint alleges that Defendants were his employers and exercised "significant control" over his work. Compl. ¶¶ 10-14. Perhaps most significantly, Plaintiff alleges the existence of a written agreement pertaining to his employment. *Id.* ¶ 17. Mr. Campagnone claims that Defendants "advised [him] both verbally and in writing

5

that the execution of the Agreement was a condition of his employment with MJ." *Id.* ¶ 18. Plaintiff alleges that he performed his duties in accordance with the Agreement. *Id.* ¶ 21. Further, Plaintiff states that there were times in which he worked more than seventy-five hours per week for Defendants. *Id.* ¶ 22. Plaintiff alleges that he discussed payment with Russo and Dash, including an annual salary of $250,000. *Id.* ¶¶ 24-26. Further, Plaintiff alleges a variety of tasks and assignments he completed for and with Defendants in accordance with his role as the Chief Marketing Officer. *Id.* ¶ 28.

While some of the language is "boilerplate," at this stage the allegations in Plaintiff's complaint need only be plausible and the Court simply must be able to make a reasonable inference that Defendants were Plaintiff's employers. *See Wallkill*, 554 F. App'x at 34. It may be the case that documents and evidence exist bolstering Defendants' claims, but neither the Complaint nor the Answer were accompanied by exhibits shedding light on the issues presented in this Motion. As stated, the provisions of the FLSA are meant to be interpreted with "striking breadth" as to have "the widest possible impact in the national economy." *Darden*, 503 U.S. at 326. Based on alleged terms of the Agreement, the information presented pertaining to Defendants control, supervision, and lack of payment, and the additional facts alleged in the Complaint, the Court finds that Plaintiff has done enough to satisfy his burden.

## CONCLUSION

At this stage in the proceedings, Plaintiff has sufficiently alleged facts that allows the court to draw reasonable inferences that Defendants are liable for the FLSA and NYLL violations alleged in the Complaint. For the reasons set forth above, Defendants' Motion to Dismiss is hereby **DENIED**.

**SO ORDERED.**

Dated:    May 2, 2019
              New York, New York

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**